8



FILED

OCT 1 4 2009

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

POSTED ON WEBSITE

# NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

In re                                          )        Case No. 09-17529-B-13
                                               )
Evangelina Hernandez De Rua,                   )        DC No. MHM-1
                                               )
              Debtor.                          )
_____)

## MEMORANDUM DECISION REGARDING TRUSTEE'S OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN

This memorandum decision is not approved for publication and may not be cited except when relevant under the doctrine of law of the case or the rules of res judicata and claim preclusion.

Michael H. Meyer, Esq., appeared in his capacity as the chapter 13 trustee (the "Trustee").

No appearance was made on behalf of the debtor, Evangelina Hernandez De Rua (the "Debtor").

Before the court is an objection by the Trustee to confirmation of the Debtor's chapter 13 plan pursuant to 11 U.S.C. §§ 1325(a)(3) and 1325(a)(7) (the "Objection"). The Trustee contends that neither the chapter 13 plan nor the chapter 13 petition were filed in good faith. For the reasons stated below, the Trustee's Objection will be overruled. The chapter 13 plan will be confirmed.

This memorandum decision contains the court's findings of fact and conclusions of law required by Federal Rule of Civil Procedure 52(a), made applicable to this contested matter by Federal Rule of Bankruptcy Procedure 7052. The court has jurisdiction over this matter under 28 U.S.C. § 1334, 11 U.S.C.

§ 1325[1] and General Orders 182 and 330 of the U.S. District Court for the Eastern District of California.  This is a core proceeding as defined in 28 U.S.C. §§ 157(b)(2)(A) & (L).

**Background and Findings of Fact.**

This bankruptcy was filed under chapter 13 on August 6, 2009.  The Debtor had previously filed a chapter 7 petition in February 2004, and received a discharge in that case in June 2004.  She is not eligible for another discharge in chapter 7 until February 2012.  However, she is eligible for a discharge in chapter 13.[2]

The Debtor is a below-median-income debtor within the meaning of § 1325(b)(3) so her "disposable income" is determined from schedules I and J.  It appears from the schedules that the Debtor is a single parent committed to raising a 19-year-old disabled child.  Her only source of income is a payment she receives from the State of California for "care giver" services in the amount of $872.62 per month.  She also receives an SSI payment for her son in the amount of $870.  Her total household income, after various deductions, is stated on schedule I to be $1,698.62.  Her household expenses are stated on schedule J to be $1,658.48 leaving a monthly net income of $40.14.

The Debtor's schedules show that she has real property, her residence, valued at $98,637 subject to a mortgage of $69,536.  The monthly mortgage payment is $874.45.  She has personal property worth $950 and all of her assets are fully

---

[1]Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036, as enacted and promulgated *after* October 17, 2005, the effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, Apr. 20, 2005, 119 Stat. 23.

[2]11 U.S.C. § 727(a)(8) provides that a debtor cannot receive a discharge in chapter 7 if the debtor has already received a chapter 7 discharge in a case filed within the prior eight years. 11 U.S.C. § 1328(f)(1) provides that a debtor cannot receive a discharge in chapter 13 if the debtor has received a discharge in a case filed under chapter 7 within the prior four years.  This case was filed more than five years after the prior chapter 7.

exempt. Her debts include the mortgage, which is apparently current because the chapter 13 plan does not propose to pay any arrearage through the plan. Her scheduled unsecured debts total $8,728, including a debt to Ford Motor Credit Company for a repossessed automobile. The Debtor has no scheduled priority debts. Three unsecured claims have been filed to date totaling $11,201.03 (including the claim of Ford Motor Credit Company).

The Debtor's attorney is Layne Hayden, Esq. Prior to the bankruptcy, she paid Mr. Hayden $2,226, plus the chapter 13 filing fee. The Debtor still owes Mr. Hayden $1,274, which she proposes to pay through the plan using all of her monthly net income, $40 per month (less trustee's fees) over a period of 36 months.[3] The proposed chapter 13 plan will pay nothing to the unsecured creditors.

**Issues Presented.**

The Trustee contends that both the bankruptcy case and the chapter 13 plan were filed in "bad faith" because the Debtor cannot receive a chapter 7 discharge and she is not paying anything to her creditors through this chapter 13. He contends that this chapter 13 case is just a disguised chapter 7 which should be a *per se* abuse of the Bankruptcy Code.

**Analysis and Conclusions of Law.**

Pursuant to §1325(a)(3), the Debtor cannot confirm a chapter 13 plan which is not filed in good faith. In addition, the Debtor cannot confirm a plan unless the petition itself is filed in good faith. §1325(a)(7). A case can be dismissed if the petition was not filed in good faith. § 1307(c). The Debtor has the burden of proof on each element of confirmation by a preponderance of the evidence. *U.S. v. Arnold and Baker Farms (In re Arnold and Baker Farms)*, 177 B.R. 648, 654 (9th Cir. BAP 1994). "Good faith" is essentially an element of a debtor's qualification to be in chapter 13 in the first place. *See Marrama v. Citizens Bank of Massachusetts (In re*

---

[3]In the Eastern District of California, in a non-business case, the chapter 13 debtor's attorney may charge a "no look" fee of up to $3,500 without getting separate court approval.

*Marrama)*, 549 U.S. 365, 373 (2007). The Bankruptcy Code does not define "good faith." The court should consider the totality of the circumstances when making the "good faith" determination. The court can determine that a debtor is not acting in "good faith" without having to find that the debtor is acting in "bad faith" (dishonesty of belief or purpose). *Guastella v. Hampton (In re Guastella)*, 341 B.R. 908, 920 (9th Cir. BAP 2006) (bankruptcy schedules which estimated the judgment creditors' claim at $0.00 were not prepared in good faith when they bear no relationship to reality).

The mere fact that a debtor has filed successive bankruptcy petitions does not constitute a lack of good faith, but circumstances may indicate a lack of good faith in proposing a subsequent chapter 13 plan to the extent they reflect the debtor's intent to misuse the relief afforded by the Bankruptcy Code. The good faith requirements under § 1325(a)(3) (good faith plan) and § 1325(a)(7) (good faith bankruptcy petition) are closely related. As the court explained, in *In re March*, 83 B.R. 270, 275 (Bankr. E.D. Pa. 1988):

> [S]everal of the factors traditionally addressed by courts making the good faith inquiry pursuant to section 1325(a)(3) are no longer relevant. I conclude that the scope of good faith inquiry must be limited to those factors which address (1) whether the debtor has deliberately misinformed the court of facts material to confirmation of the plan; (2) whether the debtor intends to effectuate the plan as proposed and (3) whether the proposed plan is for a purpose not permitted under the Bankruptcy Code. *See Education Assistance Corp. v. Zellner*, 827 F.2d 1222, 1226 (8th Cir. 1987); *Barnes v. Whelan*, 689 F.2d 193 (D.C. Cir. 1982).
>
> Additionally, I recognize that there is a requirement that a bankruptcy be filed in good faith which is separate and apart from the requirement that a chapter 13 plan be proposed in good faith. *Matter of Madison Hotel Associates*, 749 F.2d 410 (7th Cir. 1984). *See also e.g., In re Kinney*, 51 B.R. 840 (Bankr. C.D. Cal. 1985) (tenth bankruptcy in just over two years was filed solely to prevent foreclosure by virtue of the automatic stay and was not filed in good faith). In the case at bench, Savin's objections appear to be addressed, at least in part, at the debtor's good faith in filing rather than at good faith in proposing the plan. Frequently, in the chapter 13 context there will be an overlap between the two good-faith inquiries because the debtor's plan must be filed within a very short time after the case is commenced. Bankr. Rule 3015.

*Id.* (footnote omitted).

4

This court has previously ruled in an unpublished opinion involving similar
facts that a chapter 13 plan, which paid only the attorney with nothing to the
unsecured creditors for about two years, was not filed in good faith (*In re Gonzalez*,
2008 WL 5068837, court docket number 08-15277).[4]  The key distinction between
this case and the *Gonzalez* case was the fact that Mr. Gonzalez was not eligible for
either a chapter 7 or a chapter 13 discharge.  This court found that Mr. Gonzalez'
second chapter 13 petition was simply a delaying tactic.  The analysis was
summarized as follows:

> It does not appear from the schedules, or the Plan, that
> there is any reorganization in progress here.  Indeed, the
> relief which the Debtor needs, a discharge of his
> unsecured debts, is unavailable to the Debtor at this time
> through any chapter of the Bankruptcy Code because he
> received a chapter 7 discharge in a case filed less than
> four years before this case.  §§ 727(a)(8) and 1328(f)(1).
> Therein lies the reason why this bankruptcy case appears
> to be an abuse of the bankruptcy system.  The Plan will
> stay any enforcement action by the creditors whose
> claims cannot be discharged in this case, yet will pay
> nothing to those creditors for up to two years (all Plan
> payments during that time will go to the Trustee and
> Debtor's counsel).  Before the Debtor has to make any
> payments to unsecured creditors in this case, he will be
> in a position to dismiss this case and re-file a new
> chapter 13 which proposes to pay nothing to the
> unsecured creditors for another two years and sets the
> Debtor up for a discharge after the third year.  The
> Debtor here is trying to effectuate an "end run" around
> the express restrictions of § 1328(f)(1).

The Trustee cites the case of *In re Paley*, 390 B.R. 53 (Bankr. N.D.N.Y.

---

[4]In *Gonzalez*, the debtor's plan provided for a payment of $125 per month, for a total of
$7,500 being paid over the stated five year term of the plan.  Approximately 10%, or $750,
would have been retained by the trustee as an administrative expense.  An additional $2,600
would be paid to the debtor's attorney at the rate of $113 per month for 23 months.  That left
approximately $4,100 for distribution to the unsecured creditors' claims which totaled over
$21,000.  If the debtor completed the plan, he would pay less than 20% of his unsecured debt and
those payments would not have started until the 24th month of the plan.  At the conclusion of the
five years, the debtor would have still owed the balance of the unsecured debt.

5

2008) in support of his argument that a chapter 13 plan, which pays only the attorney's fees for a debtor who is then ineligible for a chapter 7 discharge, is not in "good faith." However, the facts in *Paley* are distinguishable in one critical regard. Neither of the plans in *Paley* proposed to run for the full 36 month "applicable commitment period" prescribed for "below-median-income" debtors in § 1325(b).[5]

The court noted in *Paley* that both debtors were seeking a chapter 13 discharge as soon as they had paid the balance due to their attorneys. The trustee did not object to the amount of the payments, she objected to the length of the plans, which was tied solely to the payment of attorney's fees. Had the debtors committed to make payments for the full 36 month "commitment period," the "unsecured creditors in both cases would have realized a meaningful return." *Id.* at 56. The court had little difficulty finding that the debtors, who had the ability but not the intent to fund a meaningful chapter 13 plan, were not acting in good faith. Their short-term plans were merely disguised chapter 7's.

The court in *Paley* did not proclaim that a plan which pays only attorney's fees is *per se* unconfirmable; the court was concerned about the debtors' attempt to tie the length of the plan to the payment of attorney's fees without any regard for the debtors' "ability to pay" something to their other creditors. "A plan whose duration is tied only to payment of attorney's fees simply is an abuse of the provisions, purpose, and spirit of the Bankruptcy Code." *Id.* at 59. Indeed, the *Paley* court was careful to limit the scope of its ruling to the facts before it, "[t]he court need not decide what would hypothetically satisfy good faith under § 1325(a)(3), only that these plans do not." *Id.* at 60.

Here, the Debtor is doing exactly what the Bankruptcy Code requires her to

---

[5]The court in *Paley* wrote one decision to resolve two identical objections by the chapter 13 trustee in two virtually identical cases. Both involved below-median-income debtors living on fixed incomes. The plans proposed to only pay the debtors' disposable incomes for nine months and twelve months, respectively.

6

do so.  Unlike the debtors in *Paley*, she has committed to pay her monthly disposable income to the chapter 13 trustee for an "applicable commitment period" of 36 months, which satisfies § 1325(b)(1)(B).  The Ninth Circuit recognized long ago, for a debtor with very little disposable income, that "good faith" under § 1325(a)(3) does not require a substantial repayment to unsecured creditors.  *Goeb v. Heid (In re Goeb)*, 675 F.2d 1386 (9th Cir. 1982) (a chapter 13 plan which only pays 1% to unsecured creditors is confirmable if otherwise filed in good faith).  "[T]he court must make its good-faith determination in the light of *all* militating factors."  *Id.* at 1390 (emphasis in original).

The Debtor has no non-exempt assets so she does not have to pay anything to her unsecured creditors to satisfy the "chapter 7 best interest" test under § 1325(a)(4).  Unlike the debtor in *Gonzalez*, this Debtor waited over four years after receiving her chapter 7 discharge and is therefore eligible to receive a chapter 13 discharge if she completes her plan.  § 1328(f)(1).  If her income or financial situation improve before completion of the Plan, then the Trustee or the holder of an allowed secured claim may seek modification of the plan under § 1329.  *Maney v. Kagenveama (In re Kagenveama)*, 541 F.3d 868, 877 (9th Cir. 2008).  None of the creditors have objected to confirmation of this Plan.  If there is a reason why any of the unsecured debts should not be discharged, the creditors have the right to file an objection to the discharge of the their claims pursuant to § 1328(a).  Unlike the circumstances presented in the *Gonzalez* and *Paley* cases, the court is persuaded that this Debtor is not trying to effectuate an "end run" around any provision of the Bankruptcy Code.  The Plan does not overtly offend any established principle of bankruptcy law.

/ / /

/ / /

/ / /

7

1  **Conclusion.**

2        Based on the foregoing, the court is persuaded that this chapter 13 case and

3  the chapter 13 plan were filed in good faith. Accordingly, the Trustee's objection to

4  confirmation of the Plan pursuant to §§ 1325(a)(3) and 1325(a)(7) will be overruled.

5  The Plan will be confirmed.

6        Dated: October ___14___, 2009

7

8                                    W. Richard Lee

9                                    United States Bankruptcy Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

8